UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAJUAAH S.,

          Plaintiff,

    v.                                                                                        **DECISION AND ORDER**

                                                                                                                         23-CV-6156S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

        1.        Plaintiff Pajuaah S.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income under Title XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff received supplemental security income from her birth until January 7, 2019, her 18th birthday, for her learning disability and borderline intellectual functioning adjustment disorder. On January 7, 2019, the Commissioner redetermined Plaintiff's eligibility for this benefit for these disorders and denied Plaintiff's eligibility application. She thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On September 30, 2021, ALJ Brian Kane commenced a teleconference hearing but adjourned it to January 27, 2022, affording Plaintiff time to obtain

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

representation.  (R.[2] at 66-76.)  Upon resumption of the hearing on January 27, 2022, Plaintiff now represented by counsel and Vocational Expert Amy Leopold appeared and testified.  (R. at 21, 38-65.)  As of the adjourned hearing, Plaintiff was a 22-year-old woman who had a limited education, having completed a special education program through the eighth grade but repeated the ninth grade over several years before leaving high school.  (R. at 23, 30, 337-38.)  She reported that she later took online classes to earn her high school equivalency.  (R. at 380, 432.)  After twice failing a comprehensive test, Plaintiff earned a certified nursing assistant license and worked as a certified nursing assistant.  (R. at 23, 30, 45-46.)

4. The ALJ considered the case *de novo* and, on February 15, 2022, issued a written decision denying Plaintiff's application for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 6, 7.)  Plaintiff filed her Response on July 26, 2023, stating that a reply was unnecessary (Docket No. 8), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion will be granted, and Defendant's Motion will be denied.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's February 15, 2022, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

2

determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 416.920.  The Supreme Court of the United States recognized the validity of this

analysis in Bowen v. Yuckert and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof at the first four steps, this burden shifts to the Commissioner at the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A);

4

20 C.F.R. § 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ redetermined Plaintiff's disability and found that, as of July 17, 2019, she was no longer disabled.  (R. at 23.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  borderline intellectual functioning and adjustment disorder.  (R. at 23.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 24.)

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform full range of work at all exertional levels with limitations.  The ALJ further determined that Plaintiff would be limited to work that required training of a month or less and to work limited to simple decision-making.  Finally, the ALJ found that Plaintiff should avoid concentrations of pulmonary irritants.  (R. at 26.)  Notably, the ALJ did not include any psychological limitations in her RFC.

13. At Step Four, the ALJ found Plaintiff was unable to perform her past relevant work as a certified nursing assistant.  (R. at 30.)  At Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 30-31.)  The ALJ posed hypotheticals to the Vocational Expert of a claimant sharing Plaintiff's age, education, experience, and RFC, but only stating that this claimant would have a "limited education" without further elaboration.  (R. at 56-57.)  The Expert then opined that this hypothetical claimant could perform such jobs as a price

marker, office helper, and grocery bagger. (R. at 31.) Accordingly, the ALJ found that Plaintiff was not disabled. (Id.)

14.  Plaintiff now argues that the RFC is not supported by substantial evidence because it did not include her severe impairments of borderline intellectual functioning and adjustment disorder. She asserts that these omissions affected the subsequent steps of the sequential analysis of her claim. She contends that she established her mental health impairments from her diagnosis, her IQ score of 69, and dropping out of high school after not completing the ninth grade after four attempts while in a special education program, concluding that she was markedly limited in applying complex directions.

15.  For the reasons that follow, this Court agrees and finds that the ALJ erred in failing to incorporate these impairments into her RFC and in the resultant hypotheticals posed to the Vocational Expert. The ALJ then relied upon the Expert's incomplete opinion to find that Plaintiff could perform jobs that exist in the national economy. This error warrants remand.

16.  Social Security Administration regulations delineate the vocational factor of the claimant's education in one of four categories (illiteracy, marginal education, limited education, and high school education) where limited education means the "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 416.964(b). The agency "generally consider that a 7th grade through the 11th grade level of formal education is a limited education." Id. § 416.964(b)(3)  The regulations recognize that the completed grade may not represent

that claimant's actual educational abilities.  See id. § 416.964(b); Joanne R. v. Kijakazi, No. 5:20-CV-1244 (DJS), 2021 WL 5629077, at *3 (N.D.N.Y. Dec. 1, 2021).

17. Limited education, however, is distinct from a learning disability impairment. Barnaby v. Comm'r, No. 8:17-CV-0399 (GTS/WBC), 2018 WL 4522057, at *4 (N.D.N.Y. June 6, 2018) (evidence of claimant's limited education does not establish learning disability absent a diagnosis thereof), R&R adopted, 2018 WL 353999 (N.D.N.Y. Aug. 14, 2018), aff'd, 773 F. App'x 642 (2d Cir. 2019).

18. Listing 12.05 for intellectual disorders requires evidence of significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and a disorder manifested before age 22.  20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.00B(4)(a), 12.05.  (See R. at 25-26.)  One element under "paragraph B" for establishing significantly subaverage general intellectual function is a claimant's IQ score of 70 or below.  Id. §§ 12.00A(2), 12.05B.  A borderline IQ score is "a severe impairment causing nonexertional limitations," that the ALJ should consider in determining a claimant's ability to work.  Lee v. Shalala, 872 F. Supp. 1166, 1170 (E.D.N.Y. 1994); Kennerson v. Astrue, No. 10-CV-6591 (MAT), 2012 WL 3204055, at *12 (W.D.N.Y. Aug. 3, 2012); Cangelosi v. Chater, No. 94-CV-2694, 1996 WL 663161, at *7 (E.D.N.Y. Nov. 5, 1996) (holding that ALJ should have considered the effect of claimant's low IQ scores).  Furthermore, a borderline intellectual functioning supported by the record "is a significant non-exertional impairment that must be considered by a vocational expert." Swope v. Barnhart, 432 F.3d 1023, 1025 (8th Cir. 2006) (quoted in Faison v. Berryhill, No. 6:16-cv-06055(MAT), 2017 WL 3381055, at *2 (W.D.N.Y. Aug. 5, 2017)).

19. This Court finds that the ALJ committed two errors here. First, the ALJ failed to incorporate Plaintiff's learning disability and borderline intelligence in her RFC. Despite the ALJ finding Plaintiff's borderline intellectual functioning and adjustment disorder were severe impairments, he did not include them and did not find an RFC that limited the tasks that Plaintiff could perform; instead, the ALJ found there that Plaintiff could perform jobs that require only up to a month's training and was limited to simple decision making. (R. at 26, 29-30.) From the evidence, it is unclear where requiring up to a month's training arose from. The RFC is silent as to the complexity of work Plaintiff could perform as the RFC fails to discuss the level of her intellectual functioning.

20. Based on this RFC, the ALJ posed hypotheticals to the Vocational Expert of a claimant that merely noted her limited education with an RFC limiting her to jobs that require only up to one month of training and work limited to simple decision-making without otherwise detailing her intellectual functioning or learning disability. (R. at 23-31, 26.)

21. Second, the ALJ erred in posing to the Vocational Expert a hypothetical claimant without reference to any learning disability but with only a limited education. (R. at 28, 29, 30, 56-57.) The ALJ thus did not disclose to the Expert the full extent of Plaintiff's condition. This resulted in the Expert opining only on the level of training that this hypothetical claimant required without full consideration of any learning disability and borderline intelligence that Plaintiff possessed. The ALJ therefore should not have relied upon this opinion and, as a result, the ALJ did not meet the burden of demonstrating that Plaintiff otherwise could perform jobs which exist in the national economy. Johnny P. v. Commissioner, No. 6:20-CV-7082SR, 2023 WL 2726375, at *5 (W.D.N.Y. Mar. 31, 2023).

8

In <u>Johnny P.</u>, the court found that, "[b]ecause the ALJ's hypothetical failed to incorporate plaintiff's capacity to meet the GED levels, the VE's response to that hypothetical cannot meet SSA's burden of demonstrating that plaintiff could perform jobs which exist in significant numbers in the national economy, warranting remand for further proceedings." <u>Id.</u>  Here, because the hypothetical does "not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." <u>Haiss v. Berryhill</u>, No. 17CV8083 (VB) (LMS), 2019 WL 3738624, at *8 (S.D.N.Y. May 15, 2019) (quotation and citation omitted), <u>R&R adopted</u>, 2019 WL 5690712 (S.D.N.Y. Nov. 4, 2019).  The Expert's opinion based on insufficient evidence cannot support the conclusion that Plaintiff is not disabled.

22.     Thus, Plaintiff's Motion for Judgment on the Pleadings will be granted, Defendant's motion will be denied, and this matter is remanded on this ground.  On remand, the ALJ shall analyze Plaintiff's learning disability and borderline intellectual functioning and include such applicable limitations in the RFC and any hypotheticals arising therefrom posed to the Vocational Expert.

23.     This Court thus need not discuss Plaintiff's remaining arguments, the ALJ's reconciliation of the RFC with consultative examiners' opinions and whether she could perform level 2 work with her learning disability.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:     June 14, 2024
              Buffalo, New York

                                      <u>s/William M. Skretny</u>
                                      WILLIAM M. SKRETNY
                                  United States District Judge